Richardson, J.
delivered the opinion of the Court.
The bond in this case was given by Jesse Gilbert, the putative father of the bastard child.
. The first question is this: Is the bond, as presented by its own terms, good at common law ? A bond for the maintenance of an illegitimate child is no more than the expressed and obligatory acknowledgment by a father of the natural and moral duty of nurture and support for the child begotten. And municipal law, when it takes from a bastard the legal claims of a legitimate child upon the parent, acts negatively and specifically in favor of the institution of lawful marriage. But such law does not annul the natural right of the illegitimate child to necessary support, nor the moral obligation of the parent to afford it.
The Bastardy Acts themselves recognize in bastards this natural right, and the father’s moral duty, to a certain extent, and enforce the duty, under a penalty. But after the case of *155 Moyer v. Folk, Harper 50, in which the nóte given to the mother by the putative father, and that after his arrest too, was held good, how can the Court doubt on this head? But look also at the case of Commissioners v. Gains, 2 Nott & McC. 459, which is relied upon to support the demurrer. In that case, while setting aside the particular bond, on other grounds, Judge Nott says, “if it had been voluntarily entered into, for the purpose of supporting the child, I should consider it a duty which the obligor was under, a natural and moral obligation to perform, and therefore a debt he was legally bound to pay.” “But,” the Judge continues, “it appears on the face of it (the bond) that he (Gains) was taken by a warrant,” &c. “and compelled, under color of legal authority, to enter into a bond for purposes which he was neither naturally nor legally bound to perform, therefore it is void.” What those illegal purposes were that did not bind Gains the putative father, we have now to enquire.
This brings us to the second and precise question of the case now before the Court — i. e. Does the bond given to the Commissioners of the -Poor by Jesse Gilbert, the defendant, expressly for the maintenance of the imputed child, come under the former class of voluntary bonds, good at common law, or under the latter class, i. e. of bonds taken under color of legal authority, which appears on its face, and of course frima facie compulsory; and being different from the bond required by the Act, and for other purposes, is therefore void?
What was Gains’ case, from the face of the bond? 1st. He had been taken on a warrant. 2d. He gave the bond to the Commissioners of the Poor. 3d. For what purpose? — -Not for the maintenance of the child, but “for the citizens of the aforesaid district.” 4th. Instead of being a bond void under the condition of paying five pounds annually for the maintenance of the child, it was to be void if he held the Commissioners and the citizens of the district harmless; and thus, as the Court says, he was discharged from the payment of the five pounds annually, which was the principal thing, i. e. to maintain the child; and thus the Judge adds, “ every feature of the Act was distorted.” This was Gains’ case: and we have to apply that decision to the present case.
But what is the case now before the Court — i. e. upon the face of the bond ? 1st. It appears that Gilbert is charged as the father of an illegitimate child: how charged? Was his person taken under a warrant ? That does not appear: and his words are not to be taken in their extreme and possible sense, in order to annul his contract — on the contrary, if possible, the terns are to be so construed as to enforce its just *156 and moral provisions. We are not then to assume a compulsory warrant, because there might have been one. But even supposing the defendant had been arrested under a warrant, it by no means follows that his bond was necessarily compulsory, or induced by his arrest; that was actually the situation of Folk when he compromised and gave the note to Mrs. Moyer, which ,was held good and binding. Men under arrest often make legal contracts. The arrest was not the turning point in Gains’ case. But being arrested, he was compelled to sign a bond, absurd upon its face, and neither required by the Act nor good at common law — a bond for purposes which, as the Judge says, “he was neither naturally nor morally bound to perform.” But returning to the present case. 2d. The bond is given to the Commissioners of the Poor, but for the maintenance of Gilbert’s imputed child. Why a man may not give such a bond voluntarily to the Commissioners of the Poor, as well as a promissory note to the mother or any one else, having the care or practical supervision of the child, I cannot perceive. The bond too is in the very amount required by the Act of 1839, and in the spirit and with the end and object of the Bastardy Acts — i. e. to support the child. How then can the Court conclude that the bond of Gilbert was like that of Gains, legally void upon its face — i. e. void by its own terms ? On the contrary, it appears on its face to be the very bond supposed by the Court in Gains’ case to be good and binding— i. e. a bond voluntarily given to the Commissioners for the maintenance of the child — which is the present case. The motion is therefore granted and the demurrer overruled.
O’Neall, J. EvaNs, J. and Withers, J. concurred.
Motion granted.